**Katherine HUNTER, Plaintiff-Appellant,**

v.

**Ray ATCHINSON et al., Defendants-Appellees.**

**No. 71-1207.**

United States Court of Appeals, Sixth Circuit.

Jan. 10, 1972.

Arthur C. Swirtz, Asst. U. S. Atty., Flint, Mich., for defendants-appellees; Ralph B. Guy, U. S. Atty., Flint, Mich., on brief.

Before EDWARDS, McCREE and MILLER, Circuit Judges.

PER CURIAM:

This is a pro se pleading seeking to take advantage of the provisions of 42 U.S.C. § 3605 (1970) of the Federal Housing Act of 1968, forbidding banks from committing racial discrimination in their financing. The statute in question provides:

"After December 31, 1968, it shall be unlawful for any bank . . . whose business consists in whole or in part in the making of commercial real estate loans, to deny a loan or other financial assistance to a person apply-

ing therefore . . ., or to discriminate against him in the fixing of the amount, interest rate, duration, or other terms or conditions of such loan or other financial assistance, because or the race, color, religion, or national origin of such person . . . ." 42 U.S.C. § 3605 (1970).

The District Judge dismissed this complaint on motion without hearing. He held that the complaint was barred by failure of appellants to observe the 180-day limitation in the statute. This provision reads in applicable part:

"A civil action shall be commenced within one hundred and eighty days after the alleged discriminatory housing practice occurred. . . ." 42 U.S.C. § 3612(a) (1970).

The pleading alleged these facts:

"1. In the month of July, 1968 I purchased property located at 2808 Detroit St. by Warranty Deed. After paying a fee of $25.00 and two monthly payments of $123.00 each, Ray Atchinson, an agent for Genesee Bank, refused to accept any future payments or the full amount past due plus legal expenses. I retained an attorney on my behalf who contacted Mr. Atchinson concerning the back payments and Mr. Atchinson refused to accept the amount in full. After a consultation with Mr. Neithercut, the bank's attorney, and my agent, Mr. Atchinson agreed to accept the payment to be brought in one week after June 9, 1968.

"2. When my agent showed up with the money on the appointed day at 11:30 a. m. the secretary-receptionist informed my agent that Mr. Atchinson had sold the property at a sheriff's sale at 10 a. m. There had been no notice of the time of sale being 10 a. m. and were under the impression the money could be brought in *anytime* that day. Later Mr. Atchinson stated that the bank would buy the house at the redemption date and I could have it on a land contract.

Mr. Atchinson reneged on the promise.

"3. Inasmuch as I had spent large sums maintaining and improving the property, relying on Mr. Atchinson's word, I felt that if I sold the property I would stand a better chance of recovering my losses rather than taking a risk at a higher interest rate.

"4. Mr. Atchinson refused to reinstate me as promised and refused a buyer. Instead ordered my agent to get out December 27, 1969.

"5. Due to Mr. Atchinson's illegal, arbitrary and capricious action I stand irreparable damages if I am not reinstated as the home owner (my husband runs a small business in the basement and to relocate would be costly), on the other hand the bank stands to reap a windfall due to the improvements made on the house in the last 14 months, after relying on Mr. Atchinson's false statements.

"6. Furthermore such discriminatory acts are in violation of the 1966 and 1968 Federal Housing Act, a violation of my civil rights and violation of my constitutional rights, which guarantees the right to own property."

An amendment to the complaint also charged defendant bank with:

"[A] policy of tolerance in acting on past due accounts which is substantially lower for negro or black customers than for white or caucasian customers under like circumstances; that the same is a policy of general application by said Bank, and became a principle of operation by said Bank."

■ We must, of course, accept the truth of the plaintiff's allegations for the purpose of evaluating a motion to dismiss. United States v. New Wrinkle Inc., 342 U.S. 371, 376, 72 S.Ct. 350, 96 L.Ed. 417 (1952); Dann v. Studebaker-Packard Corp., 288 F.2d 201, 215–216 (6th Cir. 1961).

■ This case may ultimately require us to construe the Congressional purpose involved in the limitation set forth in

the statute in the following language: "A civil action shall be commenced within one hundred and eighty days after the *alleged discriminatory housing practice occurred.*" 42 U.S.C. § 3612(a) (1970) (Emphasis added.) The question posed by this case appears to be whether the Congressional intent was to have the statute run from the first of the discriminatory acts committed (as the District Judge viewed it), or whether (as appellant contends) it should start to run from the last such event which he claims ultimately deprived him of all relief and triggered his complaint. This decision can, in our view, be appropriately made only after full evidentiary hearing and finding of facts and conclusions of law have been entered in the District Court.

The judgment of the District Court is vacated and the case is remanded for further proceedings in accordance with this opinion.