Milton **LASHER**, Appellant,

v.

**Raymond P. SHAFER** et al.

No. 71–1334.

United States Court of Appeals, Third Circuit.

Argued March 21, 1972.

Decided May 11, 1972.

**344**

John R. Cook, Pittsburgh, Pa., for appellant.

J. Justin Blewitt, Jr., Asst. Deputy Atty. Gen., Justice Dept., Harrisburg, Pa. (J. Shane Creamer, Atty. Gen., Com. of Pa., J. Sherman McLaughlin, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellees.

Before ADAMS, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Appellant's complaint asserts federal jurisdiction under 28 U.S.C. § 1343. The district court granted the motion of the defendants-appellees to dismiss for lack of federal jurisdiction. This appeal followed. The allegations of the complaint, which in this posture of the case must be taken as true, are as follows: Appellant is a technician employee of the Pennsylvania Air National Guard, and as a requirement of that employment he is a member of the Pennsylvania Air National Guard, 112th Fighter Group. He became a member of and later the first President of the Pittsburgh chapter of the Association of Civilian Technicians, Inc. (hereinafter ACT). ACT is a national organization whose stated purpose is the representation of the National Guard's civilian employees, technicians, in matters pertaining to their welfare and security on both a local and a national level. In January of 1968 there was pending in the Congress of the United States certain legislation which would amend 32 U.S.C. § 709 in a manner which would improve the benefits of technician employees of the Air National Guard by making them eligible for a federal pension pursuant to the Federal Civil Service Retirement Laws, 5 U.S.C. § 8331 et seq. Technicians at the Air National Guard base in Pittsburgh resolved to send four members of the local ACT chapter to Washington, D.C. to make known to Congress their support of the bill. The defendant Shafer in 1968 was Governor of the Commonwealth and in that capacity in charge of the Pennsylvania Air National Guard. Defendant Snyder in 1968 was, and presently is, Adjutant General of the Commonwealth of Pennsylvania having under his command the Pennsylvania Air National Guard. Defendants Phillipy, a Brigadier General, Bollen, a Colonel, Walters, Duke, and Prave, Lieutenant Colonels, are all Air National Guard officers in the chain of command which supervises the 112th Fighter Group. Phillipy, Bollen, Prave and Duke are also civilian technician employees of the Air National Guard, holding supervisory positions over appellant's technician employment. Beginning on January 28, 1968 the defendants took various steps designed to discourage appellant and others from associating with ACT, from associating in Washington with other ACT chapters in making known to Congress the views of ACT members on the pending bill, and from approaching the seat of Government on behalf of the members of the Pittsburgh ACT chapter. The defendants resorted to threats of loss of employment, proclamations of untruths, and promises of promotion for those who would disassociate from ACT. In November, 1968 two of the defendants

without cause charged appellant with unsatisfactory work performance and punished him by reducing him in his technician rank and pay because of his continued association with and activities on behalf of ACT. The defendants Snyder and Shafer refused to allow a hearing on the foregoing charges, thus leaving appellant with no redress for the illegal, arbitrary and capricious deprivation of his rights.

The foregoing factual assertions are alleged to be violations of 42 U.S.C. § 1983 and § 1985.[1] The defendants, for whom the Attorney General of Pennsylvania appeared, moved pursuant to Fed. R.Civ.P. 12 to dismiss the appeal on the ground that 28 U.S.C. § 1343 did not confer federal jurisdiction since the complaint alleged no violation of 42 U.S.C. § 1983 and § 1985. They contended that assuming the truth of the allega-

[1]. "Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"Conspiracy to interfere with civil rights—Preventing officer from performing duties

(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer to the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

Obstructing justice; intimidating party, witness, or juror

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment,

or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

Depriving persons of rights or privileges

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

tions they were at all times acting under color of federal rather than state law. The district court dismissed because " . . . the acts complained of . . . were performed by the defendants, not under color of state law, but in the performance of duties assigned by federal law and regulations. . . . " We reverse.

■ Appellees acknowledge that the Pennsylvania Air National Guard is a part of the Commonwealth militia formed pursuant to Article 3, § 16 of the Pennsylvania Constitution, P.S.[2] They acknowledge, as well, that Governor Shafer was at the time of the acts complained of, commander-in-chief of the military forces of the Commonwealth.[3] They acknowledge that the Pennsylvania Air National Guard had not, at the time of the acts complained of, been called into the service of the United States. They contend, however, that appellant's civilian employee status as well as the authority of his supervisors in that status was entirely governed by federal law. Chapter 7 of Title 32 U.S.C. sets forth the authority of the Secretary of the Army and the Secretary of the Air Force to buy, and upon requisition of the governor of any state, to issue to the Army National Guard and Air National Guard of that state, the supplies necessary to equip its Army or Air National Guard for field duty. 32 U.S.C. § 702(a). No property may be so issued unless the state makes provision, satis-

factory to the Secretary, for its protection and care. 32 U.S.C. § 702(d). The governor must appoint a commissioned officer of the state's National Guard as a fiscal officer who must give bond to the Secretary for the safekeeping and proper disposition of federal property issued to the state's National Guard. 32 U.S.C. § 708. The appellee's principal reliance is upon 32 U.S.C. § 709, which in early 1968[4] in relevant part provided:

"(a) . . . . Under such regulations as the Secretary of the Air Force may prescribe, funds allotted by him for the Air National Guard may be spent for the compensation of competent persons to care for material, armament, and equipment of the Air National Guard. A caretaker employed under this subsection may also perform clerical duties incidental to his employment and other duties that do not interfere with the performance of his duties as caretaker.

(b) Enlisted members of the National Guard and civilians may be employed as caretakers under this section. However, if a unit has more than one caretaker, one of them must be an enlisted member. Compensation under this section is in addition to compensation otherwise provided for a member of the National Guard

---

2. "National guard to be organized and maintained.

The citizens of this Commonwealth shall be armed, organized and disciplined for its defense when and in such manner as may be directed by law. The General Assembly shall provide for maintaining the national guard by appropriations from the Treasury of the Commonwealth, and may exempt from State military service persons having conscientious scruples against bearing arms."

3. The Governor shall be commander-in-chief of the military forces of the Commonwealth, except when the same shall be called into the actual service of the United States. Pa.Const. Art. 4, § 7.

4. The statute was substantially amended on August 13, 1968. Pub.L. No. 90–486, § 2(1), 82 Stat. 755. The amendment became effective January 1, 1969. Pub.L. No. 90–486, § 11. The amendment provides in part: "(d) [a] technician employed under subsection (a) is an employee of the . . . Department of the Air Force . . . and an employee of the United States. However, a position authorized by this section is outside the competitive service if the technician employed therein is required under subsection (b) to be a member of the National Guard." This amendment is inapplicable to the instant case.

\* \* \* \* \* \*

(e) Funds appropriated by Congress for the National Guard are in addition to funds appropriated by the several States . . . for the National Guard, and are available for the hire of caretakers and clerks

(f) The Secretary concerned shall fix the salaries of clerks and caretakers authorized to be employed under this section, and shall designate the person to employ them. . . . "

The Secretary has promulgated comprehensive regulations, comprising Chapter 1, Air National Guard Regulations, for the technician caretaker program authorized by 32 U.S.C. § 709. On the basis of that statute, and the regulations, appellees contend that the acts complained of were all performed under color of federal law.

Appellees' argument focuses on the employment status of the appellant. It is true that his employment was authorized by a federal statute. His status, however, is not relevant for purposes of the applicability of 42 U.S.C. §§ 1983 and 1985. Appellant is protected by the Civil Rights Act because he is a person within the jurisdiction of the United States. Interference with his status as a "federal" employee, if he be such, will provide a measure of his injury. But that status does not inform us whether those injuring him acted under color of state or federal law.

Some of the appellees were in 1968 both officers in the Pennsylvania Air National Guard and caretakers employed pursuant to 32 U.S.C. § 709. But § 709 contemplates their employment in the care of federal material, armament and equipment for which the Commonwealth is accountable. It does not authorize discipline of Guard members for the exercise of the first amendment rights of association and petition to Congress. We do not see how the acts alleged in the complaint, if they occurred, were in any way related to the care of the entrusted federal property. The acts complained of, if they took place, were done in the capacity of member or employee of the Commonwealth militia, and in pursuit of that militia's perceived interests. Those Commonwealth appellees who are not civilian caretakers, but are joined solely as Air National Guard officers, are an *a fortiori* case.

The status of the appellee caretakers, as of 1968, was the same as that of the Maryland caretakers discussed in Maryland for use of Levin v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965). In that case wrongful death actions were brought against the United States under the Federal Tort Claims Act. Decedents were passengers in an airliner with which a Maryland Air National Guard jet trainer collided. The pilot of the jet trainer, admittedly negligent, was an officer in the Maryland Air National Guard and a § 709 civilian caretaker. In a case brought in the District of Columbia, the District of Columbia Circuit held that the United States was liable. United States v. Maryland for use of Meyer, 116 U.S.App.D.C. 259, 322 F.2d 1009 (1963). In a case on behalf of a different decedent brought in the Western District of Pennsylvania, this Circuit held that the United States was not liable because the pilot was an employee of the State of Maryland. Maryland for use of Levin v. United States, 329 F.2d 722, 729 (3d Cir. 1964). The judgment of this circuit was affirmed. Justice Harlan reviewed the history of the caretaker legislation and said:

"In sum, we conclude that the congressional purpose in authorizing the employment by state authorities of civilian caretakers, the administrative practice of the Defense Department in treating caretakers as state employees, the consistent congressional recognition of that status, and the like supervision exercised by the States over both military and civilian personnel of the National Guard, unmistakably lead in combination to the view that civilian as well as military personnel of the Guard are to be treated for the

purposes of the Tort Claims Act as employees of the States and not of the Federal Government." 381 U.S. at 52–53, 85 S.Ct. at 1300.

It is possible to draw a distinction between the Federal Tort Claims Act and the Civil Rights Acts, and thereby to distinguish as authorities for this case both Justice Harlan's opinion and the opinion of Judge Smith for this court. But the reasoning of both opinions is directly applicable. They point out that while federal assistance is afforded to the state militia by loan of equipment and by funding, the militia remains a state organization. The caretaker program merely assists the states in carrying out their state obligation of maintaining, preserving, and accounting for the loaned equipment. Thus the district court erred in holding that the complaint does not allege action under color of state law. We express no opinion as to the effect in another case under either the Civil Rights Acts or the Federal Tort Claims Act, of the 1968 amendment to 32 U.S.C. § 709 set forth in note 4 *supra*.

Appellees urge that assuming the district court erred in dismissing under Fed.R.Civ.P. 12 for lack of jurisdiction, the judgment should nevertheless be affirmed on the ground that they are immune from damage suits. They rely on cases such as Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896). Clearly, however, a decision that each of the appellees is entitled to some form of executive immunity is one that cannot be made on the basis of the allegations in the complaint. There is no record before us from which we could conclude that any of the appellees, if they committed the · acts alleged, were acting in an area which is so vital to some overriding public interest that it must be immunized from the possibility of civil accountabili-

ty in a court for violations of the Civil Rights Acts.

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.