Jerry L. ROWE, Plaintiff-Appellant,

v.

STATE OF TENNESSEE et al.,
Defendants-Appellees.

No. 77–1331.

United States Court of Appeals,
Sixth Circuit.

Argued April 12, 1979.
Decided Nov. 13, 1979.

---

William Terry Denton, Maryville, Tenn., for plaintiff-appellant.

John H. Cary, U. S. Atty., Robert E. Simpson, Asst. U. S. Atty., John W. Wheeler, Hodges, Doughty & Carson, Knoxville, Tenn., for defendants-appellees.

Before LIVELY and KEITH, Circuit Judges, and PECK, Senior Circuit Judge.

PECK, Senior Circuit Judge.

This is an appeal from the second of two orders of the district court. Each order dismissed in part plaintiff's complaint for injunctive and pecuniary relief for defendants' alleged violations of plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, as well as of his rights under the Privacy Act of 1974, 5 U.S.C. § 552a (1976), and various executive orders. Appeal is taken only from the dismissal of that portion of the action which was brought under 42 U.S.C. § 1983 (1976). This statute provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Under 28 U.S.C. § 1343, district courts have jurisdiction of actions brought under § 1983.

The primary question on appeal is whether appellees, as federal employees or "agents" of the federal government, could have acted "under color of state law," thereby triggering the application of § 1983.

Appellant Rowe was, prior to the discharge from his job which gave rise to this action, a National Guard Technician in the State of Tennessee. As such he was formally an employee of the United States. He was required, as a condition of his continued civilian employment as a technician, to be a member of the Tennessee Air National Guard.[1] Appellant brought this action against the State of Tennessee, its governor, its Air National Guard, appellant's own Guard unit, his military superiors, and several of his fellow civilian technicians. By a separate order the district court dismissed the complaint as to the Governor, the Tennessee Air National Guard, and the Guard unit. No appeal was taken from that order. Following that order interrogatories were propounded to the appellant and written questions were submitted to him by the court. Affidavits and counter-affidavits were filed. Finally the district court found that the record was in "sufficient shape for the Court to pass on the issues raised by defendants" in their motions to

dismiss. The district court then ruled that it had no jurisdiction of Rowe's cause under § 1983, since the acts complained of were done under color of federal, not state law. We hold that in so ruling the district court applied the wrong criteria for delimiting action "under color of state law." We therefore vacate in part its order of dismissal.

At this point in the proceeding the allegations and averments of the appellant must be viewed in the light most favorable to him. So doing, we see that in September, 1972, technician Rowe filed a grievance with his superiors following his removal from a certain job. After this filing, Rowe alleged a campaign of "harassment, abuse and intimidation" began, directed against him by his military and civilian supervisors, who, because of Rowe's status as both a civilian technician and a Guardsman, often exercised both civilian and military authority over him.

Around November, 1973, Rowe complained to his superiors that he had been assigned to perform work for which two jobs had been funded by the federal government. He was thereafter temporarily grounded from flying. In May of 1974 Rowe was permanently grounded after being forced by threat of a "psychiatric" discharge, he contends, into taking a "voluntary" demotion and pay cut.

About one year later Rowe attempted to obtain documentary evidence of the fact that he was performing the work of two men. His Base Commander had a letter of reprimand issued against him. Rowe filed a grievance concerning this letter and it was removed from his record. One month later a second letter of reprimand issued, free from the procedural defects of the first. This second letter reprimanded Rowe for, among other things, exercising his right to grieve of the first reprimand.

\* \* \* \* \* \*

1. The National Guard Technicians Act of 1968 provides in relevant part:

(b) Except as prescribed by the Secretary concerned, a technician employed under subsection (a) shall, while so employed, be a member of the National Guard and hold the military grade specified by the Secretary . . . .

(d) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States. . . .

32 U.S.C. § 709 (1976).

Four months later Rowe filed unfair labor practice charges with his Base Commander and with the Adjutant General of the Tennessee National Guard. On the evening of the day that the charges were filed, a flight surgeon informed Rowe that he would have to undergo psychiatric and physical examinations. Rowe did so, with results apparently favorable to him. (The record is unclear on this point.)

In January, 1976, the Adjutant General of the Tennessee National Guard announced that there would be a lay-off or "reduction in force" among civilian technicians as a result of a change in a type of aircraft used by the Guard. This aircraft change was apparently ordered by the U. S. Air Force Chief of Staff. Following a competition among technicians in which Rowe received the lowest rating, he was dismissed from his civilian job as a technician. Rowe was the only technician discharged; he claims that his commanding officer and the Adjutant General had been "quoted in various media" as saying that the change in aircraft would, far from causing a lay-off, create twenty-one new technicians' jobs, and that the reduction in force was no more than a "malicious guise" for an effort directed at Rowe individually. Rowe's discharge was, however, appealed through administrative procedures and upheld.

## I. JURISDICTION UNDER § 1983

The district court dismissed as to all defendants Rowe's action alleging deprivations actionable under § 1983. In its memorandum opinion the court reasoned that, under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), a district court has no jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 of an action seeking damages for violations of constitutional rights committed under color of *federal* law.

It is only by inference that this conclusion may be drawn from *Bivens,* since that case held that a district court may entertain an action at law which seeks a judgment against federal agents for their violations of the Fourth Amendment. The jurisdictional basis of such a suit was found in 28 U.S.C. § 1331, the grant of "federal question" jurisdiction. Since we hold today that appellees' actions could, as a matter of law, have been "under color of state law," we need not reach the interesting question whether *Bivens* and its progeny have rendered the distinction between "federal" and "state" action moot in cases where a monetary award is the remedy sought for violations of the Federal Constitution.[2] *Compare Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1976): "The question of whether . . . we should, by analogy to our decision in *Bivens v. Six Unknown Federal Narcotics Agents,* . . imply a cause of action directly from the Fourteenth Amendment which would not be subject to the limitations contained in § 1983, is one which has never been decided by this Court."

### A. Construction of "Under Color of State Law."

The district court applied the following definition of action "under color of state law" in determining that appellees' acts were under color of *federal* law:

Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.

*United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941).

The district court relied further on *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), and *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part, Mo-*

---

**2.** *Bivens* has been extended by courts to provide a remedy for violations of rights other than those under the Fourth Amendment. *E. g., Yiamouyiannis v. Chemical Abstracts Service,* 578 F.2d 164, *cert. denied,* 439 U.S. 983,

99 S.Ct. 573, 58 L.Ed.2d 654 (1978), in which this Court ruled that the logic of *Bivens* was as applicable to First Amendment violations as to Fourth Amendment ones.

*nell et al. v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which incorporate *Classic's* definition of "color of state law."

Those of the appellees who are Rowe's military superiors argue that since their authority to order and carry out a reduction in force is traceable to a federal statute,[3] Rowe's discharge could not have been done "under color of state law." Appellees who are Rowe's civilian supervisors argue that since as National Guard technicians they are federal employees, their disciplinary or "retaliatory" actions against Rowe were likewise under color of federal law.

Appellees' arguments, and the district court's conclusions, find dispositive significance in the word "only" in the language of *Classic, supra.* Under the interpretation of § 1983 urged by the appellees, acts could never be "under color of state law" if done under the slightest tincture of federal authority. But in a federal system where state and national action is often parallel, "state action" might never be found in this pure, abstract form. Such a test for the applicability of § 1983 would be nearly impossible to meet.

An examination of the cases cited in support of this reading of "under color of state law" shows that the language of *Classic* was not meant to be so restrictive. *Classic* itself addressed the question whether tampering with ballots by state election officials, an act clearly illegal under state law, could have been done under color of state law. *Screws* and *Monroe v. Pape* similarly addressed the question whether arrests or searches probably actionable under state law could be done under color of that law. In none of these cases was the effect of concurrent federal and state action on the applicability of a civil rights statute an issue.[4] There is, on the contrary, language in *Screws* which emphasizes the importance under civil rights statutes of the nature of the right impaired:

> The problem is not whether state law has been violated but whether an inhabitant of a State has been deprived of a federal right by one who acts under "color of any law." He who acts under "color" of law may be a federal officer or a state officer. He may act under "color" of federal law or of state law. The [civil rights] statute does not come into play merely because the federal law or the state law under which the officer purports to act is violated. It is applicable when and only when someone is deprived of a federal right by that action.

*Screws, supra,* at 325 U.S. 108, 65 S.Ct. at 1038.

Rowe has clearly alleged violations of "federal" rights—rights to freedom of speech and due process of law, guaranteed by the Constitution, and the right to unhampered union activity, secured by federal statutes and executive orders.

The problem of overlapping state and federal authority and its relation to action "under color of state law" was examined in the recent case of *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). The Tahoe Regional Planning Agency was an entity created by a compact between California and Nevada. Such a compact required congressional approval, which was obtained. The Planning Authority argued that this congressional action made its own actions, and those of its officers, activities "under color of federal law" and thus not actionable under § 1983. After first noting that Congress exercised little authority over the state-created agency other than the right to approve or reject

---

**3.** "[A] reduction in force, removal, or an adverse action involving discharge from technician employment . . . shall be accomplished by the adjutant general of the jurisdiction concerned . . . ." 32 U.S.C. § 709(e)(4) (1976).

**4.** Both *Classic* and *Screws* interpreted the phrase "under color of state law" as it appeared in the criminal-law analog of § 1983. (The former § 20 of the Criminal Code, the present 18 U.S.C. § 242 (1976)). The test for state action is the same under both statutes. *See, e. g., United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

the compact creating it, the Supreme Court ruled that *"[e]ven if it were not well settled that § 1983 must be given a liberal construction,* [footnote omitted] these facts adequately characterize the alleged actions of the respondents as 'under color of state law' within the meaning of that statute." *Lake Country, supra,* at 99 S.Ct. 1176–77. (Emphasis added.)

The federal control of the National Guard Technicians Program is clearly greater than that exercised by Congress over the Tahoe Regional Planning Agency. It is perhaps more analogous to the federal involvement in the case of *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), in which an action was brought under § 1983 challenging a rule used by Alabama officials in distributing funds under the Federal Aid to Dependent Children program. As with the National Guard Technicians program, the funds involved were federal and the project itself was created by Congress; administrative authority was entrusted to state agencies. The Supreme Court did not question federal jurisdiction of the case under §§ 1983 and 1343. Under the interpretation of § 1983 applied by the district court in the present case, however, the acts of the state administrators would have had to be considered "under color of federal law" and thus not actionable under that statute.

Nonetheless appellees argue that the federal regulation of the technicians program under the National Guard Technicians Act of 1968, 32 U.S.C. § 709 (1976), is so pervasive that the discipline and discharge of the appellant can only be seen as action under color of federal law. The question of the propriety of such a view is not one of first impression. In *Lasher v. Shafer,* 460 F.2d 343 (3d Cir. 1972), the court found that National Guard "caretakers," while perhaps federal employees, could nevertheless act under color of state law:

> Some of the appellees were in 1968 both officers in the Pennsylvania Air National Guard and caretakers employed pursuant to 32 U.S.C. § 709. But § 709 contemplates their employment in the care of federal material, armament and equipment for which the Commonwealth is accountable. It does not authorize discipline of Guard members for the exercise of first amendment rights of association and petition to Congress. . . . The acts complained of, if they took place, were done in the capacity of member or employee of the Commonwealth militia, and in pursuit of that militia's perceived interests.

*Lasher, supra,* at 460 F.2d 347. The acts complained of in *Lasher* occurred before the employment status of technicians (formerly called "caretakers") had been clarified by the 1968 Act. The *ratio decidendi* of *Lasher* is nonetheless applicable to the present case.

The legislative history of the National Guard Technicians Act of 1968, *supra,* shows no reason to depart from the rule of *Lasher.* The purpose of the Act, in authorizing federal employee status for Guard technicians, was

> (a) To provide a retirement and fringe benefit program which will be both uniform and adequate;
>
> (b) To recognize the military requirements and the State characteristics of the National Guard by providing for certain statutory administrative authority at the State level with respect to the technician program;
>
> (c) To clarify the technician's legal status which in certain areas has been the subject of conflicting court decisions, especially on the matter of whether technicians are covered under the Federal Tort Claims Act regarding third party actions against the U.S. Government.

H.R.Rep. No. 1823, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 3318, 3319.

█ It strains belief to think that the decision to discharge an individual technician was not within the "statutory administrative authority at the state level" which the statute grants. Appellees argue that because this administrative authority is reserved to the States by federal statute, the authority itself must be characterized as "federal." This is an exercise in circularity

which, if implemented, would create a gap between the remedies provided for "federal" violations of constitutional rights provided by *Bivens* and that provided for "state" violations of rights by § 1983.

This is not to say that acts of National Guard technicians, or of National Guardsmen administering the technicians program, could never be done "under color of federal law." Clearly if Guardsmen committed unlawful acts while implementing some federal policy, then the acts would be more properly actionable under *Bivens* than under § 1983.

## II. THE INDIVIDUAL APPELLEES

### A. Source and Extent of Power Over Appellant.

Not all the individual appellees can be said to have acted against the appellant "under color of state law." We therefore review the allegations against each appellee to determine the source and extent of the power which appellant claims was abused. In such a review, done in the course of assessing the propriety of an order of dismissal, we are mindful of the fact that "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The district court held that it had no jurisdiction of Rowe's § 1983 claim since the acts complained of could not, as a matter of law, have been performed "under color of state law." We have held that in so doing the court interpreted that legal phrase too restrictively. Under the district court's interpretation, questions of subject-matter and personal jurisdiction might well have been answerable on the basis of the pleadings, supplemented by affidavits and interrogatories. Under the more liberal interpretation of § 1983 which is dictated both by the stated purposes and judicial interpretation of that statute, there remain unanswered questions of fact regarding the proper characterization of the actions of most of the appellees.

■ Appellees Wallace, Akin, Pierce, Carter, Jones and Arr are Rowe's military superiors. Some of them are his supervisors as a civilian technician as well. Since their power over Rowe was rooted in their state-created positions, the question of their capacity to act "under color of state law" is *a fortiori.* We vacate that portion of the district court's order dismissing the action against them.

■ Appellees Gambill, Livesay and Helton are of the same military rank as Rowe. The district court found that "[i]t is not contended that these defendants possessed any direct civilian supervisory authority over plaintiff." Rowe's answers to the interrogatories propounded to him, however, show that Gambill and Livesay exercised some control over the scheduling and assignment of Rowe's tasks as a technician. Rowe has thereby demonstrated that these two appellees might have had some authority over him which they could have misused. For the reasons given above, we hold that this authority could have been "under color of state law," and vacate the district court's dismissal of the action against these two defendants.

■ Rowe's sole allegation against appellee Helton was that Helton wrote a statement which was critical of Rowe. This statement was appended to the first letter of reprimand issued against Rowe. It was not alleged that such an act abused any power or authority Helton had over Rowe, but it is alleged that Helton acted in concert with the other defendants to Rowe's detriment and injury. We therefore also reverse the order of dismissal as to appellee Helton.

### B. Immunity from Liability.

We do not reach the question of any immunity from liability of the above appellees under *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), and *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). This "qualified immunity" of National Guard officers and

enlisted men was not relied upon by the district court in dismissing the action against these appellees. It has not been raised by them on appeal.

Immunity is asserted by defendant-appellee Flight Surgeon Wallis, who performed a physical examination of Rowe and supervised Rowe's psychiatric examination. In doing so, Wallis was apparently following orders given by appellee Akin, his commanding officer. Rowe alleged that Dr. Wallis said during the physical examination that Akin would ground Rowe for contrived "medical" reasons if Rowe objected publicly to a job transfer. However, neither the results of the physical examination Wallis performed, nor of the psychiatric examination he arranged, were adverse to the appellant.

■ Rowe does not even suggest that these favorable results were *quid pro quo* for Rowe's accepting the transfer. On the contrary, Rowe alleged that appellees Carter and Akin ordered the examinations hoping "that they could use the examination results in their malicious desire to discharge the plaintiff from his technician job . . ." Under these circumstances the favorable results lead to the conclusion that appellee Wallis, acting upon orders, simply performed his proper military duties in good faith, even though his commanding officer might have wished him to do otherwise. Such actions are within the sphere of qualified immunity for Guard officers adumbrated in *Procunier* and *Scheuer,* and Rowe's further allegations as to Wallis's acting in bad faith and in concert with other defendants to force him into taking a pay cut are of a conclusory nature. We therefore affirm the order of the district court as to Wallis.

## CONCLUSION

■ We have held that under the proper, liberal construction of § 1983, the actions of the state administrators of a "mixed" federal and state program may, as a matter of law, be actions "under color of state law," as required for application of the civil-rights statute. The appellant, having weathered this threshold test, must show first, that he was indeed deprived of rights secured by the Constitution and laws of the United States, and second, that these deprivations were made possible by the "official" powers, either actual or assumed, of the perpetrators of the deprivations. These are factual matters for the trial court's exclusive determination. We accordingly vacate the order of the district court as to all appellees except Wallis, and remand the cause for further action consistent with this opinion.