Glenn T. SCHULTZ, Plaintiff-Appellant,

v.

Major General Billy G. WELLMAN, Brigadier General Carl Black, and Lieutenant Colonel John B. Greene, Defendants-Appellees.

No. 82–5372.

United States Court of Appeals, Sixth Circuit.

Argued July 25, 1983.

Decided Sept. 19, 1983.

John B. Southard, Jr., argued, Middletown, Ky., for plaintiff-appellant.

Thomas G. Mooney, Louisville, Ky., Steven L. Beshear, Atty. Gen. of Kentucky, John H. Gray, Asst. Atty. Gen., argued, Frankfort, Ky., for defendants-appellees.

Before KENNEDY, and WELLFORD, Circuit Judges, and BROWN, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Appellant Schultz appeals from an order of the District Court dismissing his 42 U.S.C. § 1983 cause of action with prejudice. The District Court dismissed the action because it found that the appellees had not acted under the color of state law, Schultz had failed to exhaust his administrative remedies and the prerequisites for injunctive relief could not be shown. We affirm this dismissal but for reasons other than those relied upon by the District Court.

The appellant, Glenn Schultz, served as a sergeant in the Kentucky Air National Guard. He was also employed by the federal government as a civil technician in his National Guard unit. In June, 1981, while attending a training camp, Schultz pleaded guilty in the North Carolina courts to charges of "knowingly keeping a vehicle which is used for the keeping of a controlled substance."[1] On January 17, 1982, Schultz received notice of discharge from the Kentucky Air National Guard for mis-

conduct, AFR 39–10(2)(c), and unfitness.[2] AFR 39–10(3)(a), See also 39–12, 30–19, 30–2.

On April 9, 1982, the Adjutant General of the Kentucky National Guard, appellee Wellman, approved the recommendations of the administrative discharge board[3] that Schultz be dismissed from the Kentucky Air National Guard service with an honorable discharge.[4] As a result, Schultz was also discharged from his employment as a technician with the Kentucky Air National Guard.[5] Schultz did not seek administrative remedies from either discharge but instead filed an action in federal district court under 42 U.S.C. § 1983 seeking re-instatement, backpay and declaratory and injunctive relief.[6]

At oral argument counsel for Schultz explained that the appellant's real complaint is that the North Carolina misdemeanor of knowingly keeping a vehicle used for storing a controlled substance has no counterpart in the applicable Air Force regulations or the Military Manual for Courts-Martial (MCM). For this reason, Schultz contends,

1. As reflected in the charging information and the appellant's guilty plea, this offense is characterized as a misdemeanor under North Carolina law even though a defendant may receive up to a 2 year sentence. Schultz was given a 2 year suspended sentence. *See* N.C.Gen.Stat. 90–108(a)(7).

2. Kentucky's Military Code basically tracks the federal Uniform Code of Military Justice, 10 U.S.C. § 801 et seq. The defendant Kentucky National Guard officers and Adjutant General utilized Air Force substantive and procedural regulations in accomplishing Schultz' dismissal from the state National Guard. The Air Force regulations have been cited as AFR throughout this opinion.

3. This administrative board consists of three members of the state National Guard, three senior officers and a legal advisor. AFR 11–13(2)(a).

4. The original administrative discharge hearing was scheduled within 30 days of notice to Schultz of his potential discharge in violation of Air Force regulations. The District Court initially granted Schultz' request for a temporary restraining order delaying this hearing until Schultz' private counsel could adequately prepare. The actual hearing was held much

later on March 6, 1982. Schultz has apparently dropped any claims regarding this initial violation of his rights.

5. Under the National Guard Technicians Act of 1968, 32 U.S.C. § 709 (1976), a civil technician serves as an employee of the United States as well as serving in the state National Guard. Membership in the state National Guard is a prerequisite of federal employment as a civil technician. 32 U.S.C. § 709(e)(1). *See Tennessee v. Dunlap,* 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976).

6. Because of our disposition of the appellant's claims it is unnecessary for this Court to address the question of whether the failure to exhaust administrative remedies in the specialized and narrow context of challenges to internal military decisions precludes relief to enlisted personnel even though the action is brought pursuant to § 1983. *See Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). Nor need we decide whether such a claim is justiciable in the first instance, *see id.* 103 S.Ct. at 2368 n. 3; *NeSmith v. Fulton,* 615 F.2d 196, 200–203 (5th Cir.1980), or whether the doctrine of qualified immunity should be extended to the present defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

his guilty plea to that charge constitutes neither misconduct nor unfitness under Air Force regulations and his discharge on those bases was improper.

The District Court dismissed Schultz' § 1983 claims for what he described as a lack of federal jurisdiction. The Court ruled that the National Guard officers named in the appellant's suit were acting exclusively under federal authority, pursuant to federal regulations, when they discharged Schultz from National Guard service. The Court reasoned that the appellees could not, therefore, have acted "under color of state law." Since this element of § 1983 was not satisfied, the Court dismissed the claims. The District Court independently dismissed Schultz' requests for declaratory and injunctive relief because it found that Schultz had failed to exhaust his administrative remedies as well as failing to establish the prerequisites for injunctive relief.[7]

### A. Appellant's § 1983 Cause of Action

■ In dismissing the appellant's § 1983 claims, the District Court apparently reasoned that the appellant's discharge constituted federal action because it was accomplished under authority of an overriding federal statutory scheme. Since the appellees discharged the appellant for offenses defined by federal military law under procedures prescribed by the United States Air Force, the District Court concluded that no state action[8] existed as a matter of law. In this, the District Court erred.

In *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941) the Supreme Court stated the general definition of action taken "under color of state law:"

> Misuse of power, possessed by virtue of state law and made possible only because the wrong doer is clothed with the authority of state law, is action taken "under color of" state law.[9]

Subsequent cases have clearly established that this evaluation of whether particular conduct constitutes action taken under the color of state law, must focus on the actual nature and character of that action. *See, e.g., Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 399–400, 99 S.Ct. 1171, 1176, 59 L.Ed.2d 401 (1979); *Rowe v. Tennessee,* 609 F.2d 259, 263–64 (6th Cir.1979); *Lasher v. Shafer,* 460 F.2d 343, 347 (3rd Cir.1972).

We hold that the appellees' actions in the present case in discharging Schultz from the Kentucky Air National Guard were taken under the color of state law for purposes of § 1983. In *Rowe v. Tennessee,* 609 F.2d 259, 266 (6th Cir.1979) this Court held that the actions of National Guard officers which allegedly resulted in the illegal termination of a National Guardsman's employment as a National Guard civil technician could, depending upon the "source and extent" of the authority allegedly abused, constitute actions taken "under the color of state law" and thereby be subject to § 1983 litigation. The plaintiff in *Rowe* alleged that the defendant Tennessee National

7. The District Court apparently recognized that if the defendants had not acted under the color of state law, they must necessarily have acted pursuant to federal law as federal officers. The Court thus treated Schultz' claims for injunctive and declaratory relief independently of his § 1983 cause of action. While not explicitly stated, we assume that the Court found jurisdiction to consider such claims under 28 U.S.C. § 1331, federal question jurisdiction. Since we hold that the defendants acted under color of state law under the facts of this case, there is no need to consider the validity of this conclusion. Schultz' claims for injunctive and declaratory relief are subsumed under his § 1983 cause of action.

8. Although it has been stated that there is no difference between "state action" as that phrase is utilized under 14th amendment analysis and "under color of state law" as required by § 1983, *see United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966), use of the former in this opinion is purely for convenience.

9. The Court in *Classic* was construing a criminal liability provision of the civil rights laws parallel to the civil liability created in § 1983. This provision, which is presently codified at 18 U.S.C. § 242 (1976), utilizes the identical test for action taken "under color of state law" as that employed under § 1983. *See Price,* 383 U.S. at 794 n. 7, 86 S.Ct. at 1157 n. 7.

Guard officers had maliciously arranged a pretextual "lay-off" from his civil technician post in violation of the plaintiff's rights under the first, fifth and fourteenth amendments as well as the federal Privacy Act. The defendants argued that they were acting under the color of federal not state law by virtue of the overriding scheme of federal authorization for the actions complained of by the plaintiff. The Court reasoned, however, that actions of state administrators of "mixed" federal and state run programs could never constitute state action under § 1983 if the defendant's theory were embraced. Rather, the Court concluded, in accordance with the reasoning of the Supreme Court in *Lake Country Estates,* such mixed programs require that the actions of the state administrators be scrutinized as to their actual authoritive source and the functional capacity of the actor. Since the decision to "lay-off" a National Guard technician was within the statutory authority of the state (as granted by federal statute) that decision by National Guard administrative officers was held to be one made "under color of state law."[10]

The reasoning in *Rowe* is dispositive of this issue in the present case. The appellant Schultz alleges a deprivation of federal rights by virtue of the appellees' exercise of their authority to discharge members of the Kentucky Air National Guard. Federal law directly provides that the authority to discharge enlisted personnel from the National Guard rests with the state. 32 U.S.C.App. § 1101.18(b), National Guard Regulations.[11] Officers in the National Guard, such as the appellees here, are officers of the state militia until called into active federal duty. *See, e.g., United States v. Dern,* 74 F.2d 485, 487 (D.C.Cir.1934). Discharges from the Kentucky National Guard are ordered by the state Adjutant General, a state officer, and must be approved by the Governor of the state. *See* Ky.Rev.Stat. § 38.140.

The facts before us present the simple case of state officers exercising their state authority to effectuate the discharge of state militia personnel. Admittedly, the facts in the instant case differ from those in *Rowe* in that the actions complained of here involve adherence to procedural and substantive rules which were actually promulgated by the Air Force. However, the state has been acknowledged by federal law as the authority by which National Guard personnel are to be discharged. That an agency of the state *chooses* to utilize federal substantive and procedural rules in the exercise of its state law authority does not transform the state law character of its actions. The state National Guard's decision to utilize substantive and procedural rules initially promulgated by the United States Air Force is of no consequence in

**10.** The Court also relied upon congressional intent that § 1983 be "liberally construed." *See Lake Country Estates,* 440 U.S. at 400, 99 S.Ct. at 1176. Several cases have also utilized the same rationale as *Rowe* concerning "mixed" state-federal programs. *See, e.g., Lake Country Estates,* 440 U.S. at 399 n. 13, 99 S.Ct. at 1176 n. 13 (requirement that federal consent or approval precede state action is not determinative of whether that action is taken under color of state law); *Lasher,* 460 F.2d at 347 (finding that National Guard "caretakers" even though federal employees could act under the color of state law in carrying out their National Guard duties for the state); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (not questioning that state administrators of a federally controlled and funded ADC program could act under color of state law and be subjected to § 1983 liability). The *Lasher* case is probably the most relevant precedent for the case at bar. The Court there

not only reached a result similar to *Rowe,* but also explicitly directed the inquiry at whether the specific actions complained of were undertaken by the defendant while acting in a state capacity—regardless of the authorization of that action by an overriding federal scheme.

**11.** This regulation simply states: "The authority to discharge enlisted personnel from the National Guard rests with the state." The appellees ignore this regulation and instead cite 32 U.S.C. § 322(c) for the proposition that discharge of enlisted men is accomplished under the color of federal not state law. This provision, however, simply states that members of the National Guard may be discharged under such regulations "as may be prescribed by the Secretary of [the particular branch of service]." Appendix § 1101.18 is such a regulation and it grants the authority to discharge to the state. *See also* 32 U.S.C. § 324(b) (relating to the discharge of officers).

this regard, and the rationale of *Rowe* is clearly dispositive.

## B. Failure to State a Claim upon Which Relief May Be Granted

Although the District Court erred in finding that the appellee had not acted under the color of state law, we nevertheless affirm the dismissal of appellant's claims. Accepting the allegations made in the appellant's complaints, briefs and at oral argument as true, *e.g., Hunter v. Atckinson,* 466 F.2d 490, 461 (6th Cir.1972),[12] we find that the appellant failed to state a claim upon which relief may be granted. Fed. Rule of Civ.Proc. 12(b)(6).

■ The appellant has alleged five violations of his constitutional rights. The first is that appellant's administrative discharge was based on a civilian criminal conviction which did not establish, under Air Force regulations, the misconduct or unfitness grounds relied upon by the appellees. The heart of appellant's argument here is that the North Carolina misdemeanor of knowingly keeping a vehicle used for storing a controlled substance is a "vicarious liability"[13] offense without equivalent under the military code. This position does not survive careful scrutiny. The appellant presented his arguments that knowingly keeping a vehicle used for storing a controlled substance did not constitute wrongful possession under military law. The administrative board which discharged the appellant necessarily rejected this argument and construed substantive military law of wrongful possession to encompass this North Carolina offense. We decline the appellant's invitation to review or second guess the manifestly reasonable interpretation of military law represented by the decision of the administrative discharge board in this case.[14] *See NeSmith,* 615 F.2d at

12. The appellant's complaint in the present case does not, standing alone, provide sufficient factual allegations to apprise the parties or the court of the basis for his claims. The complaint was not, however, dismissed for that reason, and the appellees did not challenge the appellant's action on such a basis. For this reason and to conserve further expenditure of judicial resources, we have considered the allegations made in the appellant's various briefs and at oral argument in evaluating his cause of action.

13. We assume the appellant means by "vicarious liability" that a North Carolina defendant need not actually know that the forbidden substance is in the vehicle. The appellant has failed to provide any authority whatsoever in support of this tenuous construction of the North Carolina law. The North Carolina Statute, N.C.Gen.Stat. 90–108(a)(7), provides:

It shall be unlawful for any person to knowingly keep or maintain any store, shop, warehouse, dwelling house, building, *vehicle,* boat, aircraft, or any place whatever, which is resorted to by persons using controlled substances in violation of this Article *for the purpose of using such substances, or which is used for the keeping or selling of the same* in violation of this Article. (emphasis added)

The information accusing the appellant charged that he "unlawfully and willfully did keep and maintain a motor vehicle ... to which motor vehicle persons using controlled substances resorted to, and wherein ·a controlled substance, to wit: marijuana, was unlawfully and *willfully kept, used* and *sold."*

The language of this statute and the charging instrument make the appellant's position appear untenable. Nevertheless, for purposes of the present case, we have accepted his contention insofar as it assumes that North Carolina intended to punish constructive possession or control over contraband by virtue of ownership of the vehicles used to store it.

14. We are also convinced, upon examination of relevant Air Force regulations and the Manual for Courts-Martial, United States (1969 Rev. Ed.), that the defendants had ample grounds to support their decision to dismiss the appellant from the Kentucky Air National Guard. Air National Guard personnel may be dismissed for misconduct under AFR 39–10(3)(a) if convicted of a criminal offense by civil authorities for an offense punishable under the Uniform Code of Military Justice by confinement in excess of one year. Under 10 U.S.C. § 934, Article 134, "wrongful" possession of marijuana is punishable by confinement at hard labor in excess of one year. MCM, ¶ 213g, Art. 134 PP. 28–71, 28–72 (1969 Rev.Ed.). The most recent revision of the MCM provides a penalty of 2 years hard labor for possession of less than 30 ounces and 5 years of hard labor for possession in excess of that amount. MCM 1969 Rev.Ed. Change 7, April 15, 1983, Table of Maximum Punishments. Possession is wrongful under the MCM if it is such as to bring "discredit" upon the service. Such possession, which may be inferred to be wrongful, *id.,* includes *constructive possession* such that the contraband was within the defendant's reach or under his

201–203; *Mindes v. Seaman,* 453 F.2d 197, 201 (5th Cir.1971). *See also Dunlap v. Tennessee,* 514 F.2d 130, 133 (6th Cir.1975) *rev'd on other grounds, Tennessee v. Dunlap,* 426 U.S. 312 (1976).

■ The appellant's second claim is that the administrative discharge proceedings denied him the 6th amendment rights to confront witnesses against him and obtain compulsory process. The simple answer to this claim is that there exists no 6th amendment right to confront witnesses or compulsory process which applies to administrative discharge proceedings.[15] Such proceedings are not criminal in nature. The National Guard of Kentucky is free to discharge its enlisted personnel outside the constraints of 6th amendment protections.[16]

■ The third claim made by the appellant is that he was denied the opportunity to "contest" a supposedly illegal search and seizure which occurred during his state arrest. Any claim he may have had in this regard was foreclosed by his knowing and intelligent plea of guilty before the North Carolina courts. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■ The appellant's fourth claim is that hearsay was admitted against him in violation of Air Force regulations. While Air Force regulations allow the use of hearsay

evidence in administrative discharge proceedings, there are some restrictions. AFR 11–31, 3(a)(4) provides that an appellee may be allowed to confront the declarant upon request. If the declarant is unavailable because of a lack of subpoena power or because attendance would be "unreasonable," the appellee is given an opportunity to obtain a deposition of the declarant or, if not reasonably obtainable, a sworn statement for submission to the board. However, a defendant's "failure to exercise the foregoing opportunities or his or her inability to do so does not affect the admissibility of hearsay evidence. If the deposition or sworn statement has not been produced, despite the good faith efforts of the [defendant], the legal advisor advises the board that such a good faith effort has been undertaken and states the reasons that the deposition or sworn statement cannot be produced." The appellant here has failed to identify what hearsay was admitted at his administrative discharge proceeding or allege that the above procedures were not followed. It is difficult to conceive of any relevant hearsay evidence that could have affected the outcome of such proceedings. The appellees here needed only to establish that the appellant had been convicted of a civilian offense the penalty for which under military law would have exceeded one year's confinement. The appellant does not claim that his conviction was invalid but rather relies on the legal theory that mili-

control. MCM ¶ 213g(2). *United States v. Wilson,* 7 M.J. 290 (1979 CMA). As pointed out in preceding footnote, it is apparent from the statutory language of the North Carolina criminal provision to which the appellant knowingly admitted guilt that willful keeping or storing of contraband is required for conviction. Under these circumstances, even if we were to review the National Guard's decision that conviction for knowingly keeping a vehicle used to store a controlled substance constituted dischargeable misconduct, the appellant would not be entitled to relief.

15. The appellant implies that such rights to compulsory process and to confront witnesses against him may be required by 5th and 14th amendment due process. We are unaware of any court which has found that such rights attach to administrative proceedings in order to achieve the fair hearing required by procedural

due process. Nor could there exist any liberty interest in this case since the appellant was honorably discharged. Such a discharge does not carry with it any of the stigma or restrictions on future employment which might conceivably trigger due process considerations. *See Board of Regents v. Roth,* 408 U.S. 564, 570–573, 92 S.Ct. 2701, 2705–2707, 33 L.Ed.2d 548 (1972).

16. The appellant at no time during the proceedings before the federal courts described what the circumstances of these supposed deprivations were. It is difficult to imagine how deprivation of such rights, even assuming that they attach to the present administrative process, could have prejudiced his case. The appellant has at no time challenged his conviction or the validity of the guilty plea which served as the basis for his discharge.

tary law does not recognize such an offense. Accepting the allegation that hearsay evidence was improperly admitted, we nevertheless can conceive of no set of facts—and the appellant suggests none—which would entitle him to relief in light of the undisputed validity of his state court conviction and the defendants' reasonable judgment that such a conviction constituted misconduct and unfitness under Air Force regulations.

█ The appellant's final claim is that the appellees had insufficient evidence to meet their burden by the required preponderance. This assertion is frivolous in view of the appellant's knowing and intelligent guilty plea to the North Carolina possessory offense.

Because we find that under the circumstances of this case the appellant could not prove any set of facts in support of his claims which would entitle him to the relief requested, we affirm the District Court's judgment dismissing the appellant's complaint.